UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HONGMIAN GONG,

                      Plaintiff,

- against -

CITY UNIVERSITY OF NEW YORK, and HUNTER COLLEGE,

                      Defendant.

Case No. 1:18-cv-3027

**FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff HONGMIAN GONG by and through her undersigned attorneys, Hang & Associates, PLLC, hereby files this amended complaint against the Defendant CITY UNIVERSITY OF NEW YORK, HUNTER COLLEGE, ANGELA T. HADDAD, ANDREW J. POLSKY and ALLAN FREI, alleges and shows the Court the following:

## INTRODUCTION

1.    This is an action against Defendants under, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1).

2.    Hongmian Gong, (hereinafter "Gong" or "Plaintiff") has been subject to discrimination and hostile work environment by the City University of New York ("CUNY") and Hunter College on the basis of her race and national origin.

3.    Plaintiff also brings claims for retaliation pursuant to Title VII of the Civil Rights Act of 1964 due to a series of adverse actions taken against her as a result of Plaintiff making a series of complaints regarding discrimination.

4.    As a result of Defendants' willful conduct, Plaintiff is seeking (1) declaratory relief (2) compensatory damages, (3) punitive damages, and (4) attorney's fees and costs.

## ADMINISTRATIVE HISTORY

5. Prior to filing this lawsuit, Plaintiff filed a charge of employment discrimination with the U.S. Equal Employment Opportunity Commission (E.E.O.C.). Gong received a Notice of Right to Sue from the EEOC dated January 5, 2018. (Exhibit 1). Plaintiff has timely commenced this action within 90 days of Plaintiff's receipt of said Notice of Right to Sue.

## JURISDICTION AND VENUE

6. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331 as this cases arises under federal law, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because CUNY Hunter College is located in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

8. Plaintiff Gong is a resident of Queens, New York, and is currently employed by Defendant CUNY Hunter College as a Professor in the Geography Department at Hunter College's campus located at 695 Park Avenue, New York, NY 10065.

## DEFENDANTS

9. Defendant, City University of New York is a publically funded university system, comprised of senior and community colleges, graduate and professional schools, research centers, institutes and consortia, with headquarters located at 535 East 80th Street, New York, NY 10021. At all times relevant to this complaint, Defendant was Plaintiff's "employer."

2

10. Defendant Hunter College is a senior college within Defendant CUNY's network located at 695 Park Avenue, New York, NY 10065. At all times relevant to this complaint, Defendant was Plaintiff's "employer."

## STATEMENT OF FACTS

11. Defendants committed the following alleged acts knowingly, intentionally and willfully.

12. Plaintiff was hired by CUNY Hunter College as an Assistant Professor on September 1, 1998. Plaintiff was promoted to Associate Professor in 2007 and Full Professor in 2014 and continues in that position through the present date.

13. Plaintiff's duties include teaching undergraduate and graduate level geography classes, as well as conducting research and publishing scholarly articles in the area of U.S. urban geography. In addition, Plaintiff also mentors undergraduate and graduate students engaged in independent research projects.

14. Throughout Plaintiff's employment, she has been recognized by both her colleagues and her superiors as a competent and effective employee.

15. Plaintiff was born in mainland China and is Asian-American.

16. Throughout Plaintiff's employment she has been subjected to discriminatory treatment by Defendants based on her race and ethnicity.

17. Despite her exemplary performance and outstanding reviews from her students, colleagues, and superiors, it took Plaintiff an unusually long time to receive her first promotion. While most assistant professors are promoted to associate professor in 5 years, it took nine years before Plaintiff received a similar promotion.

18. In 2011 the former chair of the geography department assigned Plaintiff to teach a

course in the Geography of East Asia or China, even though Plaintiff was hired as a specialist in U.S. urban geography, for no other reason except that Plaintiff was born in China.. The Urban Geography course was re-assigned, without explanation, to a graduate student, despite the fact that Plaintiff had taught the course every year since she was hired in 1998.  Despite Plaintiff's protests, the chair of the department persisted.  Plaintiff was forced to request that the Dean of the Office of Diversity & Compliance intervene on her behalf.

19. That chairperson was ultimately voted out by the faculty in May 2012, in large part due to pervasive complaints of actions demonstrating discriminatory animus against both Asian American and African American faculty members.

20. Professor Allan Frei was subsequently voted in as chairman of the geography department around September 2012.  However, the assistant to the chairperson, Ms. Reimer, remained in her position despite similar complaints of discriminatory animus against her.

21. Around April 2013 Dr. Frei provided an employee annual evaluation for Plaintiff. The employee evaluation was mostly negative.  According to the review, one of the primary issues against Plaintiff was the complaints Dr. Gong made with the Office of Diversity and Compliance.  Specifically the evaluation criticized the "baseless" complaints made by Plaintiff.

22. This was intended to punish Plaintiff for complaining of discriminatory conduct and to discourage her from making further complaints.

23. In 2013 Plaintiff was up for promotion to position of Full Professor.  However, Dr. Frei, attempted to block the promotion due to discriminatory animus, by including a damaging memorandum and addendum to her application.  Plaintiff was again required to file a complaint with Hunter College's Office of Diversity & Compliance.  As a result of that complaint Professor Frei withdrew the addendum, and Dr. Gong's promotion was granted.

4

However, the memorandum remained in Plaintiff's employee file.

24. Upon information and belief, minority and female faculty members within the geography were denied promotions and sabbaticals at much higher rates than non-minority female faculty members, and took significantly longer to receive such promotions and sabbaticals

25. For both promotions Plaintiff received, she was required to send her application out for external review after experiencing unexplained resistance within her department. On both occasions the external reviews came back positive and Plaintiff was promoted.

26. Prior to the fall semester of 2017, Defendants cancelled one of Dr. Gong's classes. The Assistant to Chair, Ms. Dana Reimer, stated that the only upper level course Plaintiff could add to make up for the lost workload was a new East Asia or China course. This was suggested for no other reason than the fact that Plaintiff Gong's national origin was Chinese. Upon information and belief the geography department was not requiring Caucasian faculty members teach classes on European geography.

27. This was the second time Plaintiff was required to inexplicably teach an East Asian or Chinese geography course, despite her known objections made previously in 2011.

28. Around January 2017 Plaintiff was secretly removed from a search committee by Dr. Frei and Ms. Reimer. Plaintiff was replaced by a Caucasian, male adjunct professor, who, according to the School of Arts and Sciences Bylaws, does not have voting authority on departmental issues. No explanation was provided for this action.

29. Around April 2017, Plaintiff was denied the ability to cast a vote for the School of Arts and Science Bylaws, in violation of the bylaws then in effect. No explanation was provided for this highly unusual action.

30. At a faculty meeting on May 10, 2017, number of presentations were scheduled and made that were highly critical of recent political actions taken by the People's Republic of China, particularly in the South China Sea. Prior to this meeting, faculty members within the geography department agreed that political topics should avoided during mandatory faculty meetings, especially those that are critical of a certain ethnic groups or nationalities. Despite this, Chinese faculty members were required to sit and listen to the presentations. Dr. Gong felt very uncomfortable throughout the presentations. Moreover, Dr. Gong also had a presentation, but it was scheduled last, and hers was the only one that there was insufficient time to get to. The meeting agenda which was devised by Dr. Frei and his assiatant Ms. Reimer was intended to cause discomfort to Dr. Gong out of both discriminatory animus and in retaliation of previous complaints of discrimination by Dr. Gong.

31. In August 2017 Plaintiff was informed by the Dean of Arts and Sciences, Andrew Polsky, that she is required to hold evening office hours for graduate advising. Dr. Gong complied, however, it was later determined that Caucasian faculty members who similarly advise graduate students, were not required to hold evening office hours.

32. Since around 2013 Plaintiff held the position of geography graduate advisor. In this capacity she would supervise graduate students in order to make sure that they were making progress on their graduate research and theses.

33. During this same period Plaintiff has been engaged in a multiyear research project in collaboration with a number of third party institutions which had provided substantial grants to fund that research, hired graduate students to work on the research, and also established a thesis-based fellowship to Hunter College geography graduate students along that line of research.

34.     One of the graduate students Plaintiff was advising was Lerone Savage.  Mr Savage was originally hired as a research assistant by Plaintiff.  Through 2016, Mr. Savage had been working on his own master's thesis, but also had access to Dr. Gong's research, subject to terms of an agreement signed between them.  By information and belief around April 2017, Ms. Reimer provided false information to Mr. Savage, and encouraged him to file a complaint against Plaintiff.

35.     This followed issues Plaintiff had with Mr. Savage regarding his thesis progress and the unauthorized use of Plaintiff's research in his thesis in violation of Plaintiff's intellectual property rights and the contract entered into between Dr. Gong and Mr. Savage.  Furthermore, there were disputes over the withholding of fellowship funds to Mr. Savage, by Plaintiff, due to a lack of progress on his thesis work.  Plaintiff was authorized to withhold the funds as scholarship coordinator, and only did so with the consent of the Research Foundation of City University of New York and the Office of Research Administration at Hunter College.

36.     Shortly thereafter Mr. Savage did file a complaint against Plaintiff.  In response to the complaints, the College later issued a fact finding report on June 13, 2017.  According to that report a number of recommendations were made in response to Mr. Savage's complaints, namely, that a departmental committee be established to oversee the administration of scholarship funds, that her Dean offer guidance on clearer agreements regarding the use of intellectual property by graduate students going forward, and that going forward it should be made more clear to students the source of their funding.

37.     Moreover, Mr. Savage was thereafter transferred to a different faculty member to serve as his thesis advisor.  After that point Plaintiff had no access or control over Savage's thesis.

7

38. Around August 2017 a Dean of Hunter College sent Plaintiff a draft of Mr. Savage's revised thesis. The thesis contained unpublished results of Plaintiff's research, which had been conducted over the course of ten years at a cost of over $650,000.

39. Plaintiff protested the unauthorized use of her research by Mr. Savage, whom she now had no authority over. Because the fact finding report contained numerous errors, Plaintiff also appealed the decision set forth in the fact finding reports.

40. The College's actions with regard to Mr. Savage caused Plaintiff significant damage to her reputation as a credible research collaborator, jeopardized her and other graduate students' ongoing research, and diminished its value by allowing Mr. Savage to take credit for Plaintiff's research in his Master's level thesis.

41. On September 13, 2017 Plaintiff filed a charge with the EEOC for the above mentioned acts of discrimination on the basis of her race and national origin as well as retaliation.

42. Just days after filing the EEOC charge Plaintiff was stripped of her positions as geography graduate advisor, and fellowship coordinator.

43. Not long after Plaintiff was contacted by the University Transportation Research Center whom she served as fellowship coordinator for. Plaintiff was informed that Dr. Frei contacted the Director of the University Transportation Research Center College and told him that some other member of the Hunter College faculty will be applying for grants in the future, and that Plaintiff should be removed as fellowship coordinator. Thus they removed Plaintiff from that position as well, after which Plaintiff no longer had control of fellowship grants.

44. Plaintiff was removed from the positions of geography graduate advisor and fellowship coordinator as retaliation for filing a charge for discrimination with the EEOC.

8

45. All of the above conduct was committed in contravention to the policies and practices set forth in the Defendant's own EEO rules, procedures and guidelines.

46. All of the above conduct was committed willfully and maliciously.

## STATEMENT OF CLAIM

### COUNT I
### [Race and National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e, *et seq.*]

47. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

48. The Plaintiff was born in Mainland China and is of Chinese ethnicity, and is thus a member of a "protected class" as defined by Title VII.

49. The Defendant's conduct as alleged at length herein constitutes discrimination based on her race and national origin in violation of Title VII.

50. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

51. Defendants knew that its actions constituted unlawful discrimination and/or showed reckless disregard for Plaintiff's statutorily protected rights.

### COUNT II
### [Hostile Work Environment Based on Race and National Origin in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e, *et seq.*]

52. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

53. Pursuant to the unlawful acts and practices of Defendant as alleged above, Plaintiff was subjected to an abusive workplace permeated with harassment and discrimination

that was sufficiently severe or pervasive to alter the conditions of her work environment during her employment with Defendant.

54. Defendant knew or should have known of the unlawful acts and practices as alleged above and the hostile work environment created thereby, yet failed to act promptly to prevent or end the harassment and discrimination.

55. As a proximate result of Defendant's unlawful acts and practices as alleged above, Plaintiff has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits, and is entitled to monetary and compensatory damages for *inter alia*, mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

56. Defendant acted with malice and/or with reckless disregard of Plaintiff's statutorily protected civil rights, and, as such, Defendant should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

## COUNT III
### [Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e3(a)]

57. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

58. Pursuant to the acts and practices of Defendant as alleged above, Plaintiff made several complaints to her supervisors and to human resources of the discrimination based on her race and national origin, and thus was engaging in a protected activity pursuant to Title VII.

59. Defendant knew or should have known of the unlawful acts and practices as alleged above and of Plaintiff's complaints regarding the same, yet failed to act promptly to

prevent or end the harassment and discrimination.

60.     Instead of taking steps to ensure a discrimination-free workplace, Defendant condoned and reinforced the unlawful acts and practices as alleged above and retaliated against Plaintiff by failed to promptly implement corrective measures and/or failing to offer an appropriate resolution to the discrimination that she suffered and the hostile work environment that was created thereby.  Defendants, then, removed Plaintiff as geography graduate advisor and caused her to be removed as fellowship coordinator as retaliation for filing charges of discrimination with the EEOC.

61.     As a proximate result of Defendant's unlawful acts and practices as alleged above, Plaintiff has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits, and is entitled to monetary and compensatory damages for, *inter alia*, mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

62.     Defendant acted with malice and/or with reckless disregard of Plaintiff's statutorily protected civil rights, and, as such, Defendant should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

## **Prayer For Relief**

WHEREFORE, Plaintiff, on behalf of herself, and the FLSA collective Plaintiffs, respectfully request that this court enter a judgment providing the following relief:

a)     A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States.

b)      An injunction and order permanently restraining Defendant and its partners,

officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

c) An award of damages against Defendant, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, compensation, and other benefits of employment.;

d) An award of damages against Defendant, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but limited to, compensation for Plaintiff's mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress.;

e) An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, lost income, reputational harm, and harm to professional reputation, in an amount to be determined at trial;

f) An award of punitive damages in an amount to be determined at trial;

g) Prejudgment interest on all amounts due;

h) An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiffs' reasonable attorneys' fees and costs to the fullest extent permitted by law; and

i) Such other and further relief as the Court may deem just and proper;

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: Flushing, New York
      June 26, 2018

                HANG & ASSOCIATES, PLLC.

                */S/ GE QU*

                William M. Brown, Esq.
                136-20 38th Ave., Suite 10G
                Flushing, New York 11354
                Tel: 718.353.8588
                rqu@hanglaw.com
                *Attorneys for Plaintiff*

# EXHIBIT 1

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**DISMISSAL AND NOTICE OF RIGHTS**

To: Hongmian Gong
110-20 71st Avenue, Apt #432
Forest Hills, NY 11375

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2017-03507 | Mabel Tso, Investigator | (212) 336-3762 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____/s/ K. J. Berry_____ /MT          01/05/2018

Kevin J. Berry,
District Director                          (Date Mailed)

Enclosures(s)

cc: Respondent:
Office of General Counsel
CUNY
205 East 42nd Street
New York, NY 10017

15