USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/27/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                                       :
HONGMIAN GONG,                                  :
                          Plaintiff,  :
                                                      :           18 Civ. 3027 (LGS)
              -against-                      :
                                                       :           **OPINION AND ORDER**
CITY UNIVERSITY OF NEW YORK, *et al.*,  :
                            Defendants.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Hongmian Gong brings this action against Defendants City University of New York ("CUNY") and Hunter College alleging discrimination and a hostile work environment based on race and national origin, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Defendants move to dismiss the First Amended Complaint (the "Complaint") in its entirety under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, Defendant Hunter College is dismissed, and Defendant CUNY's motion is granted as to the discrimination and hostile work environment claims, but denied as to the retaliation claim.[1]

I. **BACKGROUND**

       The following facts are taken from the Complaint and accepted as true for purposes of this motion. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018).

---

[1] To the extent Plaintiff brings this action against Angela T. Haddad, Andrew J. Polsky and Allan Frei -- who are not named in the caption but are named in the Complaint -- these individuals are dismissed because "individuals are not subject to liability under Title VII." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004); *accord Williams v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 1996, 2018 WL 4735713, at *4 (Sept. 29, 2018).

Plaintiff Hongmian Gong, an Asian American woman born in China, is a professor of geography at Hunter. She was hired as a specialist in United States urban geography in 1998.

After teaching as an assistant professor for nearly a decade, Plaintiff became an associate professor in 2007. Although most assistant professors become associate professors in five years, it took Plaintiff nine years to become an associate professor notwithstanding positive reviews from students, colleagues and superiors. During her promotion review, the geography department resisted her promotion. As a result, Plaintiff sent her application outside of the department for "external review" and secured her promotion.

In 2011, Plaintiff's Urban Geography course -- which she had taught since 1998 -- was assigned to a graduate student. Although Plaintiff is a United States urban geography specialist, the former chair of the geography department offered Plaintiff a course in the geography of East Asia or China. Plaintiff complained but to no avail. Plaintiff then requested intervention from the Dean of the Office of Diversity and Compliance.

In May 2012, the former geography chair was voted out largely due to complaints of discriminatory animus against Asian American and African American faculty members. Even though there were similar complaints against the Assistant to the Chair, Ms. Reimer, she remained in her position. In September 2012, Dr. Allan Frei was elected chair of the geography department.

In April 2013, Dr. Frei gave Plaintiff a mostly negative employee evaluation primarily because of the "baseless" complaints Plaintiff made to the Office of Diversity and Compliance.

When Plaintiff was up for promotion to full professor in 2013, Dr. Frei sought to block the promotion and appended a damaging memorandum and addendum to her application. After Plaintiff filed a complaint with the Office of Diversity and Compliance, Dr. Frei withdrew his

addendum, and Plaintiff secured her promotion. Dr. Frei's addendum remains in Plaintiff's employee file.

In January 2017, unbeknownst to Plaintiff, Dr. Frei and Ms. Reimer removed Plaintiff from a search committee and replaced her with a male Caucasian adjunct professor who, according to the School of Arts and Sciences Bylaws ("Bylaws"), did not have voting authority on geography department issues. A couple months later, without explanation and in violation of the existing Bylaws, Plaintiff was denied the ability to cast a vote for the Bylaws.

Around April 2017, Ms. Reimer encouraged L.S. -- Plaintiff's research assistant for whom Plaintiff was a graduate thesis advisor -- to file a complaint against Plaintiff. L.S. had access to Plaintiff's multiyear research materials based on an agreement with Plaintiff. L.S. had fallen behind on his thesis progress and attempted to use Plaintiff's research in his thesis in violation of the agreement. Plaintiff had withheld fellowship funds from L.S. because of his slow thesis development.

In May 2017, Plaintiff attended a faculty meeting where some faculty members gave presentations critical of the recent political actions of the People's Republic of China. Dr. Frei and Ms. Reimer created the meeting agenda allegedly to cause Plaintiff discomfort in retaliation for previous complaints and out of discriminatory animus. Plaintiff was very uncomfortable during these presentations. Although Plaintiff was scheduled to present at the end of the faculty meeting, because time ran out, Plaintiff was the only scheduled faculty member not able to present.

On June 13, 2017, Hunter issued a fact-finding report on L.S.'s complaint against Plaintiff. L.S. was transferred to another faculty member to finish his thesis. Plaintiff appealed the fact-finding report. She also protested L.S.'s unauthorized use of her research in his thesis,

which Plaintiff discovered in or around August 2017 when Plaintiff read a draft of L.S.'s thesis containing Plaintiff's unpublished research results.

In August 2017, the Dean of Arts and Sciences, Andrew Polsky, told Plaintiff that she must hold evening office hours for graduate advising. Plaintiff did so but later learned that Caucasian faculty members advising graduate students did not have to hold evening office hours.

Before the fall semester of 2017, one of Plaintiff's classes was cancelled. Ms. Reimer told Plaintiff that the only upper level course Plaintiff could teach was a new East Asia or China course. The geography department did not require Caucasian faculty to teach European geography classes.

On September 13, 2017, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the base of her race and national origin as well as retaliation. Days later, Plaintiff was stripped of her roles as a geography graduate advisor and fellowship coordinator.[2]

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable

---

[2] This Opinion does not consider Plaintiff's alleged removal from the "grants administrator" position, which is raised for the first time in her opposition to the motion and is not mentioned in the Complaint.

to plausible." *Twombly*, 550 U.S. at 570. On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015)).

## III. DISCUSSION

### A. Hunter College

Hunter College is dismissed as a Defendant because it is not a legally cognizable identity separate from CUNY. *See Clissuras v. CUNY*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) ("CUNY is composed of 'each senior college and each community college.' New York City Technical College does not appear to be a legally cognizable entity apart from CUNY.") (quoting N.Y. Educ. Law § 6202(2)); *Shalom v. Hunter Coll. of CUNY*, No. 13 Civ. 4667, 2014 WL 3955167, at *1 n.1 (S.D.N.Y. 2014) (finding CUNY to be the proper defendant in a case filed against Hunter College because Hunter College "is a senior college within the CUNY system and has no separate legal existence"). All claims against Hunter College will be treated as claims against CUNY,[3] and Hunter College is dismissed.

### B. Statute of Limitations

Title VII requires a plaintiff to file a claim with the EEOC within 300 days of an alleged adverse action. *See* 42 U.S.C. § 2000e–5(e)(1). "It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." *Alleyne v. Am. Airlines, Inc.*, 548 F.3d 219,

---

[3] The claims against CUNY may proceed as Congress has abrogated state sovereign immunity for Title VII claims. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *Blige v. City Univ. of New York*, No. 115 Civ. 08873, 2017 WL 498580, at *7 n. 9 (S.D.N.Y. Jan. 19, 2017), *report and recommendation adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017).

222 (2d Cir. 2008) (quoting *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000)). Plaintiff filed her EEOC Complaint on September 13, 2017. Any claim that accrued on or after November 17, 2016, is thus timely, and any claim that accrued before November 17, 2016, is time barred.

### C. Discrimination Based on Race or National Origin -- Count I

The Complaint fails to plead a cognizable claim for discrimination based on race or national origin.

#### 1. Law

To survive a motion to dismiss in a Title VII discrimination case, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). This burden is "minimal." *Id.* at 86.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 85 (internal quotation marks and citation omitted). A materially adverse change "include[s] termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (internal quotation marks omitted).

With respect to discriminatory intent, at this initial stage, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether

the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. "Because discrimination claims implicate an employer's usually unstated intent and state of mind, rarely is there direct, smoking gun, evidence of discrimination. Instead, plaintiffs usually must rely on bits and pieces of information to support an inference of discrimination, *i.e.*, a mosaic of intentional discrimination." *Vega*, 801 F.3d at 86 (internal quotation marks and citation omitted); *accord Frascatore v. Blake*, 344 F.Supp.3d 481, 492 (S.D.N.Y. 2018). "[O]ther allegations of discrimination, even if they do not independently constitute adverse employment actions, provide 'relevant background evidence' by shedding light on [the d]efendant's motivation . . . ." *Vega*, 801 F.3d at 88. "At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87.

### 2. Application

Plaintiff has limited her disparate treatment claims to those stemming from the removal of her graduate advisor position and the misappropriation and misuse of her research.[4] It is assumed, and Defendants do not dispute, that for purposes of this motion these constitute adverse employment decisions as a matter of law. The remaining issue is whether the Complaint plausibly alleges facts that directly or indirectly give rise to the inference that Plaintiff's race or

---

[4] To the extent that Plaintiff argues that she was removed as a "grants administrator," the Complaint does not contain allegations to support this position.

national original was a motivating factor in these employment decisions. The Complaint fails to meet this bar.

The Complaint does not allege any direct evidence of an intent to discriminate, such as racial slurs about Plaintiff or her protected class. *See Vega*, 801 F.3d at 87; *Hernandez v. New York City Dep't of Sanitation*, No. 18 Civ. 1808, 2018 WL 5447540, at *3 (S.D.N.Y. Oct. 29, 2018) ("Plaintiff does not allege any facts -- such as racially derogatory remarks -- that plausibly show that the alleged mistreatment of Plaintiff was racially motivated.").

Nor does the Complaint allege a "mosaic" of indirect evidence giving rise to a plausible inference of discriminatory intent -- even considering all allegations in the Complaint including instances that do not rise to the level of an adverse employment action and that occurred prior to November 17, 2016.[5]

Some allegations lack sufficiently similar comparator evidence. *See Wooding v. Winthrop Univ. Hosp.*, No. 16 Civ. 4477, 2017 WL 2559942, at *10 (E.D.N.Y. June 12, 2017)

---

[5] *Compare, e.g.*, *Vega*, 801 F.3d at 88 (finding a "mosaic" of facts giving rise to a plausible inference of discriminatory intent where a Hispanic teacher "was assigned a large percentage of Spanish-speaking students because he is Hispanic and bilingual, while his similarly situated co-workers were not assigned additional work," defendant hung a "University of Puerto Rico" banner outside plaintiff's classroom and defendant attempted to transfer plaintiff to a Hispanic principal's school); *Anyachebelu v. Brooklyn Hosp. Ctr.*, No. 16 Civ. 3159, 2017 WL 9511073, at *9 (E.D.N.Y. July 20, 2017), *report and recommendation adopted*, No. 16 Civ. 3159, 2017 WL 4233033 (E.D.N.Y. Sept. 22, 2017) (finding a "mosaic" of indirect evidence where plaintiff alleged that she was suspended for two days by her supervisor for her first cord blood error while the same supervisor gave younger non-Nigerian nurses verbal or written warnings, and plaintiff was terminated for her second cord blood incident while a second younger non-Nigerian nurse was not punished at all even though she caused the error, and defendants had not terminated the employment of another nurse for the same type of violation), *with Stern v. State Univ. of New York*, No. 16 Civ. 5588, 2018 WL 4863588, at *13 (E.D.N.Y. Sept. 30, 2018) (finding no "mosaic" of indirect evidence of discriminatory intent where the complaint raised only circumstantial evidence of anti-Jewish animus, including a manager's reference to Orthodox Jewish employees as "boychiks", a conclusory allegation of an audit of the timesheets of Jewish employees to ensure they were not using "sick days" for religious holidays, and several Jewish employees were demoted).

("If the Plaintiff seeks to compare himself to other comparable employees, they 'must be similarly situated in all material respects . . . .'") (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)). The Complaint alleges that in January 2017, Dr. Frei replaced her on a search committee with a Caucasian adjunct professor with no voting authority in the geography department. The Complaint also alleges that Plaintiff was required to hold evening office hours for graduate advising even though Caucasian faculty members who advise graduate students did not. But the Complaint does not adequately plead how the Caucasian adjunct professor or other Caucasian faculty members not required to hold evening office hours were similarly situated to Plaintiff, such as their department, responsibilities, qualifications or supervisors. *See id.* (granting a motion to dismiss because the complaint failed to state comparators' positions, responsibilities, qualifications or quality of their work); *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (finding "[t]he allegation that a non-Haitian employee could 'borrow' vacation days, while [p]laintiff could not" did not plausibly allege an inference of discrimination where "[p]laintiff has not alleged that she and her non-Haitian colleague worked in the same department, had the same job responsibilities, or had the same supervisors").

Several allegations of improper remarks are not probative of Defendants' discriminatory intent because they involve non-decision makers, do not implicate Plaintiff's race or national origin, were made far before the adverse employment actions, and/or were not related to the decision-making process for the adverse employment actions. To ascertain whether a comment is probative of discrimination, a court should

> consider[] four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in

> which the remark was made (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *accord Eka v. Brookdale Hosp. Med. Ctr.*, 247 F. Supp. 3d 250, 266 (E.D.N.Y. 2017). First, the Complaint alleges that during a May 2017 meeting, several faculty members gave presentations critical of the political actions of the People's Republic of China. The Complaint alleges that Dr. Frei and Ms. Reimer set the agenda to make Plaintiff uncomfortable out of discriminatory animus. But the Complaint does not allege that any of the participating faculty members held a racially discriminatory animus, or that the presentations themselves included indicia of discrimination, such as the use of offensive terms. Nor does the Complaint allege that the faculty members are decision makers. Even though Dr. Frei and Ms. Reimer set the agenda, considering the academic setting, that the presentations themselves were made by other individuals, and the lack of other indicia of discrimination, this incident does not support an inference of discriminatory motivation. Second, the Complaint alleges that before the fall semester of 2017, Ms. Reimer told Plaintiff that the only upper level course Plaintiff could teach was a new East Asia or China course. The Complaint does not plausibly allege that Ms. Reimer -- Dr. Frei's assistant -- is a decision maker with supervision over Plaintiff. Nor was this remark related to the decision-making process that stripped Plaintiff of her graduate advisor or fellowship coordinator positions. Third, the Complaint alleges that in 2011, a previous geography department chair told Plaintiff to teach an East Asia or China geography course. However, this occurred years before the adverse employment actions at issue in this case and involved a different decision maker. *See Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 407 (E.D.N.Y. 2018) ("Courts have consistently found that remarks far removed in time from the decision making process do not raise an inference of discrimination.").

Other allegations are not connected to Plaintiff's race or national origin. For example, the Complaint alleges that in 2013, Dr. Frei sought to block her promotion to full professor and gave Plaintiff a mostly negative employee evaluation. In addition to being years before the adverse employment decisions at hand, the Complaint does not tie these actions to race or national origin. Although Dr. Frei may have disliked Plaintiff and treated her unfairly, such conduct is not actionable under Title VII if it was not motivated by Plaintiff's membership in a protected class. *See Williams v. Victoria's Secret*, No. 15 Civ. 4715, 2017 WL 384787, at *11 (S.D.N.Y. Jan. 27, 2017), *report and recommendation adopted*, 2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) ("While the Court is sympathetic to the concerns [plaintiff] has raised in his case, federal law does not guarantee a utopian workplace, or even [a] pleasant one . . . [and] [p]ersonality conflicts between employees are not the business of the federal courts.") (internal quotation marks omitted) (some alteration in original).

Some allegations are conclusory. The Complaint alleges that "minority and female faculty members within the geography [department] were denied promotions and sabbaticals at much higher rates than non-minority female faculty members, and took significantly longer to receive such promotions and sabbaticals"; and that "[u]pon information and belief the geography department was not requiring Caucasian faculty members [to] teach classes on European geography." Such conclusory allegations are insufficient to raise a plausible inference of discriminatory intent. *See Pena v. Bd. of Elections in City of New York*, No. 16 Civ. 00427, 2017 WL 722505, at *10 (S.D.N.Y. Feb. 6, 2017), *report and recommendation adopted*, 2017 WL 713561 (S.D.N.Y. Feb. 22, 2017) ("Since plaintiff's minimal allegations of discriminatory intent are conclusory and unsupported by the concrete facts she alleges, she has not creat[ed] a

11

plausible inference of any discriminatory conduct.") (internal quotation marks omitted) (alteration in original).

In sum, the Complaint alleges actions that occurred years before the adverse employment actions, involve different decision makers (and non-decision makers) and lack sufficient comparator evidence. The Complaint thus fails to plausibly allege facts that directly or indirectly give rise to the inference that Plaintiff's race or national origin was a motivating factor in the adverse employment actions. *See Shaw v. McDonald*, No. 14 Civ. 5856, 2015 WL 8484570, at *4 (S.D.N.Y. Dec. 8, 2015) (no "mosaic" of indirect evidence of discriminatory intent where a manager made a comment regarding the smell of cooked fish, a former supervisor referred to plaintiff as "Malcom X," coworkers made comments about plaintiff being Muslim in a manner suggesting there was something wrong with it, and another employee was not punished for conduct similar to that for which plaintiff was terminated).

For these reasons, Plaintiff's claim for discrimination based on race or national origin is dismissed.

### D.     Hostile Work Environment Based on Race and National Origin -- Count II

To survive a motion to dismiss a Title VII hostile work environment claim,

> a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive -- that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class].

*Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted).

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult[ ] that is sufficiently severe or pervasive to alter the conditions

of the victim's employment and create an abusive working environment." *Duplan v. City of New York*, 888 F.3d 612, 627 (2d Cir. 2018) (internal quotation marks omitted) (alteration in original). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn*, 795 F.3d at 321 (internal quotation marks omitted). "A plaintiff must show not only that [ ]he subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Duplan*, 888 F.3d at 627 (internal quotation marks omitted) (alteration in original). "In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d at 321 (internal quotation marks omitted).

The Complaint fails to allege a cognizable hostile work environment claim under Title VII. The Complaint alleges that over the course of six years, Plaintiff was twice asked to teach a course in a non-specialty field, attended a faculty meeting with presentations critical of the politics of the People's Republic of China which made Plaintiff uncomfortable, was removed from a search committee, was denied the ability to cast a vote for the Bylaws, encountered resistance to two promotions, endured one negative employee review and was required to hold evening office hours. Although Plaintiff perceived these instances as hostile or abusive, given the quality and quantity of such incidents over the course of years (some of which may be time barred, *see* 42 U.S.C. § 2000e–5(e)(1)), none of the incidents -- alone or together -- rise to the level of pervasive and severe conduct that altered the conditions of Plaintiff's employment. *See Duplan*, 888 F.3d at 617–18, 627 (confirming the dismissal of a complaint alleging that over the

13

course of three years, plaintiff's supervisors deprived plaintiff of responsibilities and subordinates, attempted to reduce plaintiff's salary, denied plaintiff a merit raise given to the majority of plaintiff's colleagues, suspended plaintiff without pay for ten days based on a false harassment claim even though the complaint requested only an informal conference, and denied plaintiff's application for a promotion); *Harrison v. State Univ. of New York Downstate Med. Ctr.*, No. 16 Civ. 1101, 2018 WL 4055278, at *12 (E.D.N.Y. July 6, 2018), *report and recommendation adopted*, 2018 WL 4054868 (E.D.N.Y. Aug. 24, 2018) (collecting cases where hostile work environment claims were dismissed at the pleading stage where the complaint failed to demonstrate sufficient severity or pervasiveness).

In addition, the Complaint fails to plead a causal link between Plaintiff's perceived hostility and her membership in a protected class. An actionable hostile work environment claim must include non-conclusory allegations establishing that the hostile work environment was created because of the plaintiff's protected class. *See Patane*, 508 F.3d at 113. "[A]s the Supreme Court explained, Title VII does not bar all workplace harassment only harassment that occurs because of the harassment target's lawfully protected characteristic(s)." *Akinsanya v. New York City Health & Hosps. Corp.*, No. 16 Civ. 3332, 2017 WL 4049246, at *7 (S.D.N.Y. July 28, 2017), *report and recommendation adopted sub nom.* 2017 WL 4023138 (S.D.N.Y. Sept. 12, 2017) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998)). Here, most allegations are not tied to Plaintiff's race or national origin. And, for those that are, as explained above regarding Plaintiff's discriminatory treatment claim, the Complaint fails to create a causal link between the complained-of conduct and Plaintiff's protected classes. *See Davis v. New York City Dep't of Corr.*, No. 17 Civ. 3863, 2017 WL 5634123, at *5 (E.D.N.Y. Nov. 22, 2017) ("As with [p]laintiff's discrimination claim, [p]laintiff's hostile work

environment claim fails because the [c]omplaint does not allege that the conduct creating the hostile work environment was motivated by any discriminatory intent."); *Akinsanya*, 2017 WL 4049246, at *7 (dismissing a hostile work environment claim where the complaint failed to plead a connection between the misconduct and her protected class).

### E. Retaliation -- Count III

An employer may not "discriminat[e] against an employee for opposing any practice made unlawful by Title VII." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014). To state a claim for retaliation under Title VII, "the plaintiff must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 USC § 2000e-3(a)).

An adverse action for purposes of a Title VII retaliation claim includes "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)), and is thus broader and encompasses more conduct than an adverse action for a disparate treatment claim. The causation requirement for a Title VII retaliation claim requires a plaintiff to plead "but-for" causation. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Vega*, 801 F.3d at 90; *see Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.").

15

The Complaint alleges that after Plaintiff made complaints to her supervisors and human resources about discrimination based on her race and national origin, Defendants retaliated by failing to correct the discrimination. But the Complaint does not allege that Plaintiff spoke with human resources (at all), or lodged complaints after November 17, 2016, with the Office of Diversity and Compliance or her supervisors. *See* 42 U.S.C. § 2000e–5(e)(1)). Separately, the failure to correct the complained-of discrimination is not a retaliatory action under Title VII. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint"); *accord Kelly v. New York State Office of Mental Health*, 200 F. Supp. 3d 378, 404–05 (E.D.N.Y. 2016).

The Complaint also alleges that Defendants removed Plaintiff as a geography graduate advisor and fellowship coordinator in retaliation for filing a discrimination claim with the EEOC. Both acts constitute adverse employment actions. As explained above, the removal of Plaintiff as a geography graduate advisor -- as conceded by Defendants for the purposes of this motion -- constitutes an adverse employment action for the purposes of Plaintiff's discrimination based on race or national origin claim. Because adverse employment actions for retaliation claims encompass a broader pool of events than discrimination claims, and removal as a graduate advisor or fellowship coordinator would dissuade a reasonable person from pursuing a charge of discrimination, these adverse actions are sufficient for the retaliation claim. *See Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017) ("In the context of retaliation, 'adverse employment action' is broader than it is in the context of discrimination.").

The Complaint satisfies the "but-for" causation requirement by pleading the close temporal connection between Plaintiff's protected activity in opposition to an unlawful employment practice and the adverse employment actions. The Complaint alleges that "just days" after filing the EEOC Complaint, Plaintiff was removed as a geography graduate advisor and fellowship coordinator. *See Vega*, 801 F.3d at 90–91 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."); *Raymond v. City of New York*, 317 F. Supp. 3d 746, 768 (S.D.N.Y. 2018) ("courts in this Circuit have inferred a causal relationship when three or fewer months have elapsed"); *see also Rivera*, 743 F.3d at 25 (filing an EEOC Complaint is a protected activity).

Defendants challenge causation by asserting that they did not receive notice of Plaintiff's EEOC Complaint until after the adverse employment actions occurred,[6] that they had non-retaliatory reasons for the adverse employment action and that the adverse employment actions were "already in the works" before the EEOC Complaint was filed. But these factual defenses do not challenge the sufficiency of the Complaint. *See, e.g.*, *Brophy v. Chao*, No. 17 Civ. 9527, 2019 WL 498251, at *5 (S.D.N.Y. Feb. 7, 2019) ("there is no controlling Second Circuit precedent that requires plaintiffs to plead pretext even where the plaintiff's complaint itself offers a legitimate, nondiscriminatory reason for the [adverse employment action]"); *O'Toole v. City of Orange*, 255 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) ("Whether an employer had a nondiscriminatory reason for firing a plaintiff is a question that a court reaches only at step two

---

[6] Defendants' EEOC Notice of Charge is not considered on this motion to dismiss because it is not integral or referenced in the Complaint. *See Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint.") (internal quotation marks omitted); *accord GeigTech E. Bay LLC v. Lutron Elecs. Co.*, No. 18 Civ. 5290, 2018 WL 6518858, at *2 (S.D.N.Y. Nov. 29, 2018).

of the *McDonnell Douglas* framework, and the Second Circuit instructed in *Littlejohn* that, in order to survive a motion to dismiss, '[t]he plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment *made prior* to the defendant's furnishing of a non-discriminatory justification.'") (alteration in original) (quoting *Littlejohn*, 795 F.3d at 311).

For these reasons, Plaintiff's retaliation claim survives Defendants' motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendant Hunter College is dismissed. Defendant CUNY's motion to dismiss is GRANTED as to Counts I and II and DENIED as to Count III. For clarity, the surviving claim is against CUNY for retaliation under Title VII based on removing Plaintiff from her graduate advisor and fellowship coordinator positions in retaliation for filing a discrimination claim with the EEOC.

The Clerk of Court is respectfully directed to close the motion at Docket Number 23.

SO ORDERED.

Dated: February 27, 2019
   New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

18